**No. 26-13023-AA**

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

TANIESJA MITCHELL,

*Plaintiff/Appellant*,

v.

GRAYSON DUTTON

*Defendant/Appellee.*

Appeal from the United States District Court
for the Middle District of Georgia
4:25-cv-160-CDL

**APPELLANT'S BRIEF**

Jeff Filipovits
Wingo Smith

Filipovits & Smith, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
(404) 905-2225

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to 11th Cir. R. 26.1, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and any other identifiable legal entities related to a party:

1. City of Columbus, Georgia
2. Clark, James C., Jr.
3. Dutton, Grayson
4. Fay, Clifton Cartwright
5. Filipovits, Jeffrey R.
6. Filipovits & Smith, LLC
7. Gristina, Thomas F.
8. Helmick, David R.
9. Kenimer, Guy Hayes, Jr.
10. Land, Clay D.
11. Muscogee County Sheriff's Office

12. Page, Scrantom, Sprouse, Tucker & Ford, P.C.

13. Rayfield, David C.

14. Sheftall, Lucy T.

15. Smith, Wingo F.

16. Waldrep, Mullen & Callahan

Pursuant to Eleventh Circuit Rule 26.1-3(b), the undersigned hereby certifies that no publicly-traded company or corporation has an interest in the outcome of the above-captioned case or appeal.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

## STATEMENT REGARDING ORAL ARGUMENT

The relevant evidence in this case consists almost entirely of body camera recordings. The legal issue is a single, discrete question of whether Defendant's use of force constituted a seizure under the Fourth Amendment. Oral argument will not significantly aid the Court in its decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons .......... C-1

Statement Regarding Oral Argument .......... i

Table of Citations .......... ii

Statement of Jurisdiction .......... iii

Statement of the Issues .......... 1

Statement of Facts .......... 2

Summary of the Argument .......... 5

Argument and Citation of Authority .......... 6

a. Standard of review .......... 6

b. The district court erred by finding that Plaintiff was not seized under the Fourth Amendment .......... 7

c. Defendant is not entitled to qualified immunity under the Fourth Amendment .......... 12

d. The district court erred by dismissing plaintiff's state law claims .......... 14

Conclusion .......... 15

Certificate of Compliance .......... 17

# **TABLE OF CITATIONS**

Cases


*Acevedo v. Canterbury*,
457 F.3d 721 (7th Cir. 2006)........................................................8

*Atkinson v. City of Mountain View*,
709 F.3d 1201 (8th Cir. 2013)......................................................8

*Benson v. Facemyer*,
657 F. App'x 828 (11th Cir. 2016)...............................................11

*Blue v. Lopez*,
901 F.3d 1352 (11th Cir. 2018)....................................................12

*Cantu v. City of Dothan*,
974 F.3d 1217 (11th Cir. 2020)......................................................6

*Edwards v. Grubbs*,
179 F.4th 909 (11th Cir. 2026)...........................................14 & n.9

*Gilmore v. Ga. Dep't of Corr.*,
144 F.4th 1246 (11th Cir. 2025)..................................................12

*Haves v. City of Miami*,
52 F.3d 918 (11th Cir. 1995)..........................................................6

*Johnson v. City of Miami Beach*,
18 F.4th 1267 (11th Cir. 2021)......................................................6

*Kassa v. Fulton Cnty., Georgia*,
40 F.4th 1289 (11th Cir. 2022)....................................................12

*Patel v. City of Madison*,
959 F.3d 1330 (11th Cir. 2020)....................................................13

*Pinto v. Collier Cnty.*,
2022 WL 2289171 (11th Cir. June 24, 2022)...........................9–10

*Saunders v. Duke*,
766 F.3d 1262 (11th Cir. 2014)....................12

*Slusher v. Carson*,
540 F.3d 449 (6th Cir. 2008)....................8

*Stephens v. DeGiovanni*,
852 F.3d 1298 (11th Cir. 2017)....................13

*Tennessee v. Garner*,
471 U.S. 1 (1985)....................8

*Torres v. Madrid*,
592 U.S. 306 (2021)....................6–7, 9

*Watkins v. Davis*,
156 F.4th 1084 (11th Cir. 2025)....................10, 11 n.2

*Watts v. Fla. Int'l Univ.*,
495 F.3d 1289 (11th Cir. 2007)....................14

*West v. Davis*,
767 F.3d 1063 (11th Cir. 2014)....................6, 8

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*,
477 F.3d 1282 (11th Cir. 2007)....................15

<u>Rules</u>

Fed. R. App. P. 32....................18

<u>Statutes</u>

28 U.S.C. § 1291....................iv

28 U.S.C. § 1331....................iv

28 U.S.C. § 1367....................14

42 U.S.C. § 1983....................4, 12, 14

## STATEMENT OF JURISDICTION

This case asserts a violation of the Fourth Amendment under 42 U.S.C. § 1983. The district court had jurisdiction under 28 U.S.C. § 1331.

This is a direct appeal from the district court's grant of Defendant's motion for summary judgment. *See* Doc. 19. The district court entered its final judgment on July 27, 2026. *See* Doc. 20. Appellant filed a timely notice of appeal on August 26, 2026. *See* Doc. 21.

This Court has jurisdiction of the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting summary judgment on Plaintiff's Fourth Amendment claim by concluding that Defendant's use of force did not constitute a seizure, despite evidence permitting a jury to find that Defendant deliberately pushed Plaintiff with sufficient force to incapacitate her.
2. Whether the district court erred in granting qualified immunity based on the absence of clearly established law that Defendant's conduct constituted a seizure, rather than determining whether the use of force violated clearly established Fourth Amendment law.
3. Whether the dismissal of Plaintiff's supplemental state-law claims should be vacated if this Court reinstates her Fourth Amendment claim.

**STATEMENT OF FACTS**

On December 13, 2024, Plaintiff and her husband attended her husband's employer's Christmas party at a restaurant near downtown Columbus. Mitchell Dep. 21:13-22, 26:6-13. After the party, Plaintiff and her husband went to a bar in downtown Columbus called the Saloon. *Id.* at 31:11-23.

While Plaintiff and her husband were inside the bar, a large fight started that involved numerous patrons. Mitchell Dep. 38:3-39:24; J. Mitchell Dep. 23:1-22. Plaintiff and her husband—who were not involved in the altercation—eventually pushed their way through the crowd and out of the bar. As they exited the bar, they were separated. Mitchell Dep. 49:22-50:6, 55:23-56:21; J. Mitchell Dep. 32:17-35:13.

Meanwhile, several officers responded to the scene. The remainder of the incident was captured by several police body cameras, with two that specifically captured the use of force against Plaintiff: Defendant's body camera footage, *see* Doc. 13-4, and the body camera of another responding officer, Ofc. Batson. *See* Doc. 16.

That body camera footage shows that by the time officers arrived, the scene had calmed substantially. *See generally* Doc. 13-4 at 02:00. The body camera of one responding officer shows a view from the window of the bar looking down to

the street below showing approximately 15 people on the street in front of the bar. That same video shows that the bar was not "evacuated" by officers, and that there were dozens of patrons still inside the bar. As the video continues, it shows that Defendant passed approximately 20-30 people on the street before he encountered Plaintiff.

Defendant's body camera recording captures the use of force at issue from one perspective. *See* Doc. 13-4 at 07:16. The body camera of Ofc. Batson provides the second view. *See* Doc. 16 at 06:43. Those videos show that Ofc. Batson was in the process of arresting an individual. Defendant's body camera video shows two other officers, Ofc. Batson and Sgt. Hayes,  had the subject pinned face down to the ground. The subject is heard saying "I'm not fighting," and there is no indication whatsoever that there is an ongoing struggle once the subject was on the ground. *See* Doc. 13-4 at 07:20.

While the officers had the individual pinned on the ground, Plaintiff and another woman approached the officers and were standing next to them. Sgt. Hayes testified that his "vest was being pulled forward almost over my head at one point in time." Hayes Dep. 23:5–15. He further claimed that he was "fighting a third person who was just trying to pull me away from them." *Id.* The video evidence shows that none of this happened. *See* Doc. 13-4 at 07:20; Doc. 16 at 07:20.

Similarly, as Defendant approached the scene of the arrest, Ofc. Hayes testified that Plaintiff "was grabbing [Hayes] by the shoulder strap of his vest . . . pulling on him while we were still trying to put the guy in handcuffs." Batson Dep. 15:16–21. But again, a jury could find the video evidence contradicts this claim.

As Defendant rapidly approached the scene of the arrest, he loudly yelled "back up" approximately one second before he suddenly pushed Plaintiff from behind. Doc. 13-4 at 07:20; Doc. 16 at 07:20. Defendant then yelled "back up" again precisely at moment that Defendant launched Plaintiff head-first into the sidewalk. Doc. 13-4 at 07:18. The video clearly shows Plaintiff being pushed with such force that both of her feet left the ground. *See* Doc. 16 at 07:16.

After Plaintiff hit the ground, she was either unconscious or otherwise immobilized and Sgt. Hayes and Ofc. Batson continued to handcuff the subject. *See* Doc. 13-4 at 07:18. After the subject was handcuffed, Defendant asked Plaintiff if she wanted an ambulance. Plaintiff said she did, and Defendant walked away without calling one. *See* Doc. 13-4 at 08:30. Defendant testified that he could have arrested Plaintiff, but that he chose not to. Dutton Dep. 60:7–10. Plaintiff's injuries included ongoing back pain and an injury to her hand that required four months of physical therapy, Mitchell Dep. 112:15–20, 158:3–159:6. A later internal

investigation by the Muscogee County Sheriff found that Defendant's use of force was excessive. Dutton Dep. 65:5–24.

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that Defendant's use of force did not constitute a seizure under the Fourth Amendment. Whether physical force constitutes a seizure depends on whether it objectively manifests an intent to restrain, and the amount of force used is relevant to that determination. Here, the district court characterized Defendant's conduct as merely pushing Plaintiff away from other officers. But the video evidence, viewed in Plaintiff's favor, permits a jury to find that Defendant, effectively without warning, deliberately pushed Plaintiff from behind with such force that her feet left the ground and she was propelled head-first toward a concrete sidewalk. A jury could reasonably conclude that Defendant's use of force was intended to incapacitate Plaintiff and thereby restrain her freedom of movement. By adopting Defendant's characterization of the force rather than drawing reasonable inferences in Plaintiff's favor, the district court violated the summary judgment standard.

The district court further erred in its qualified immunity analysis. Rather than determining whether Defendant's conduct constituted a seizure and then considering whether the force violated clearly established Fourth Amendment law,

the court required Plaintiff to identify precedent establishing that similar conduct constituted a seizure. These are distinct inquiries. Once the court determines that a seizure occurred, the appropriate question is whether the officer's use of force violated clearly established constitutional law. Eleventh Circuit precedent establishes that officers may not gratuitously slam nonthreatening, nonresisting individuals into hard surfaces with force sufficient to cause serious injury. The district court never addressed whether Defendant's conduct violated that clearly established prohibition. Accordingly, this Court should vacate the judgment and remand for consideration of that question in the first instance.

Finally, because the district court declined supplemental jurisdiction over Plaintiff's state-law claims solely because it dismissed her federal claim, reinstatement of that claim also warrants vacating the dismissal of the state-law claims and remanding them for further proceedings.

## ARGUMENT AND CITATION OF AUTHORITY

### A. STANDARD OF REVIEW

This Court reviews the decision to grant summary judgment de novo, applying the same legal standards which bound the district court. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). Any ambiguities in the video evidence must be construed in Plaintiff's favor. *See, e.g.*, *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021); *Cantu v. City of Dothan*, 974 F.3d 1217, 1226-27 (11th Cir. 2020).

### B. THE DISTRICT COURT ERRED BY FINDING THAT PLAINTIFF WAS NOT SEIZED UNDER THE FOURTH AMENDMENT

To determine if a seizure has occurred, "[t]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain . . . . While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain. A tap on the shoulder to get one's attention will rarely exhibit such an intent." *Torres v. Madrid*, 592 U.S. 306, 317 (2021) (cleaned up). There is no requirement that a seizure occur over an extended period of time; on the contrary, a "seizure can be accomplished in an instant." *West v. Davis*, 767 F.3d 1063, 1070 (11th Cir. 2014).

The inquiry into whether a use of force constitutes a seizure includes an analysis of the amount of force used. "While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain." *Torres*, 592 U.S. at 317.

The fundamental question in this case is whether Defendant simply pushed Plaintiff out of the way of two officers—as he claims—or whether he, knowing that Plaintiff was in a compromised position, pushed her with such force that he slammed her into a concrete sidewalk such a jury could find that the objective intent was to restrict Plaintiff's movement. In the district court, Plaintiff characterized the force as "slamming her head-first into a concrete sidewalk." Doc. 15 at 5-6. The district court rejected this characterization, and wrote that "the undisputed evidence reflects that Dutton pushed Mitchell in the back, causing her to fall forward onto the pavement." Doc. 19 at 9. But That characterization violates the summary judgment standard. The video evidence shows that Defendant, effectively without warning, pushed Plaintiff from behind with such force that her feet completely left the ground. *See* Doc. 16 at 07:16. A jury could find that it would have been impossible for her to catch herself without serious injury. And a jury could reject Defendant's claim that he merely pushed Plaintiff with a "quarter

of his strength" for the purposes of moving her out of the way. Dutton Dep. 41:3-42:16.

If a jury finds that Defendant's use of force was such that it would necessarily injure or incapacitate Plaintiff, it would support a finding that Defendant acted with the objective intent to restrain her. *See, e.g.*, *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1208–09 (8th Cir. 2013) (concluding that an officer seized the plaintiff when he shoulder checked him "ten to fifteen feet backward into the side of a truck"); *Slusher v. Carson*, 540 F.3d 449, 452, 454–55 (6th Cir. 2008) (holding that an officer seized the plaintiff when he momentarily grabbed her hand to retrieve a paper she was holding); *Acevedo v. Canterbury*, 457 F.3d 721, 724–25 (7th Cir. 2006) (explaining that an officer seized the plaintiff with a single punch that briefly knocked him to the ground); *West*, 767 F.3d at 1070 (holding an officer seized an attorney at a courthouse security line by grabbing her arm, and pulled her). These cases accord with the principle that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person . . . ." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted).[1]

[1] *See also Cheairs v. City of Seattle*, 145 F.4th 1233, 1240 (9th Cir. 2025) (recognizing "our sister circuits recognizing that seizures had occurred when officers used force to restrict the ability of individuals to move about freely, even if for a brief period of time, and where the force was not applied to effectuate an arrest"); *Salmon v. Blesser*, 802 F.3d 249, 254 (2d Cir. 2015) (concluding a seizure occurred where an officer used "painful force to control [a person's] movements");

The district court's reliance on *Pinto v. Collier Cnty.*, 2022 WL 2289171 (11th Cir. June 24, 2022), is misplaced. *Pinto* is an unpublished decision in which the court concluded that an officer did not seize the plaintiff by pushing him to separate him from another man during an altercation. *Id.* at *4 n.7. But the force in *Pinto* merely caused the plaintiff to stumble approximately two feet without falling. *Id.* at *1–2. Here, by contrast, the video evidence permits a jury to find that Defendant pushed Plaintiff with such force that both feet left the ground and she was propelled head-first into a concrete sidewalk, rendering her unable to continue moving. Unlike the push in *Pinto*, the force here was sufficient to incapacitate Plaintiff, permitting a reasonable inference that Defendant intended to restrain her movement, even if momentarily. And although Defendant may have ultimately wanted to separate Plaintiff from the arresting officers, that objective is not necessarily inconsistent with an intent to accomplish that separation by physically incapacitating her. Because "the amount of force remains pertinent in assessing the objective intent to restrain," *Torres v. Madrid*, 592 U.S. 306, 317 (2021), the

---

*Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023) ("Physically grabbing someone is likely to be a seizure because it is likely to restrict movement, at least briefly."); *United States v. Delaney*, 955 F.3d 1077, 1083 (D.C. Cir. 2020) (recognizing "officers need not totally restrict a citizen's freedom of movement" to effectuate a seizure) (quoting *United States v. Smith*, 794 F.3d 681, 686 (7th Cir. 2015)).

district court erred in treating *Pinto* as dispositive without accounting for the substantially greater force used against Plaintiff.

The district court also held that, even if Defendant's use of force did constitute a seizure, the law showing that it constituted a seizure was not clearly established. *See* Doc. 19 at 9 ("[Plaintiff] has not identified a case finding similar conduct to be a Fourth Amendment seizure."). But this analysis applies the qualified immunity inquiry at the wrong place. The gateway question is whether the use of force constituted a seizure. If so, then the next question is whether the use of force itself violated clearly established Fourth Amendment law. Plaintiff is generally not required to first show that it is clearly established that the conduct was a seizure when the Court analyzes an excessive force claim, and then to again show that it was clearly established that it violated the Fourth Amendment. For example, in *Watkins v. Davis*, 156 F.4th 1084, 1103 (11th Cir. 2025), the court analyzed whether the plaintiff was subjected to a seizure when officers fired at her as she drove her car, but did not strike her. The court did not analyze whether the law concerning whether the plaintiff was seized was clearly established. Instead, it held that the plaintiff was seized, that "as a result, the protections of the Fourth Amendment kicked in[,]" and then proceeded to the qualified immunity question

as it pertained to the excessive force claim. *See id.* at 1110.[2] Similarly, in *Benson v. Facemyer*, 657 F. App'x 828, 834 (11th Cir. 2016), the court analyzed a false arrest claim. The first question was when the plaintiff was actually arrested. The court analyzed the *Gil* factors,[3] and concluded that plaintiff's detention constituted an arrest. The court did not require that the law on when the detention ripened into an arrest be clearly established. The court then proceeded to the qualified immunity inquiry, i.e., whether the arrest was supported by arguable probable cause.

Here, the district court should have concluded whether Plaintiff was subject to a seizure under the Fourth Amendment. If so, then it should have proceeded to the question of whether Defendant is entitled to qualified immunity under the Fourth Amendment claim, rather than stopping to ask whether the application of the Fourth Amendment itself is clearly established. While the two questions may be, to some extent, intertwined, they are still distinct.

---

[2] The court in *Watkins* did also analyze whether qualified immunity applied to a separate unlawful *Terry* stop claim. But the court only addressed that issue because the parties focused their arguments on whether there was reasonable suspicion. *Id.* at 1107. Similarly, *Andre v. Clayton County*, 148 F.4th 1282, 1297–99 (11th Cir. 2025), is distinguishable because it did not involve an excessive-force claim. Instead, the plaintiffs challenged the legality of investigative detentions, making the question whether the encounters constituted seizures central to whether the officers had violated clearly established law.

[3] *See United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000).

### C. DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY UNDER THE FOURTH AMENDMENT

Because the district court did not reach the issue of qualified immunity under the Fourth Amendment, Plaintiff's § 1983 claim should therefore be remanded for the district court to determine it in the first instance. *See Blue v. Lopez*, 901 F.3d 1352, 1360 (11th Cir. 2018) (vacating the dismissal of a § 1983 claim and remanding to the district court to consider the issue of qualified immunity in the first instance); *Kassa v. Fulton Cnty., Georgia*, 40 F.4th 1289, 1295 (11th Cir. 2022) (declining to address the issue of qualified immunity after reversing the district court's grant of prosecutorial immunity and "leav[ing] it to the district court on remand to consider these arguments in the first instance.").

If this Court does consider the issue for the first time on appeal, it should find that Defendant is not protected by qualified immunity.

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025)

Eleventh Circuit precedent shows that slamming an arrestee's head into the ground constitutes excessive force. *See, e.g.*, *Saunders v. Duke*, 766 F.3d 1262,

1267–70 (11th Cir. 2014) (holding that officers were not entitled to qualified immunity where, after a handcuffed suspect momentarily lifted his head from hot pavement, an officer allegedly slammed his face into the pavement with extreme force, because even minor noncompliance did not justify gratuitous force against a nonresisting, nonthreatening suspect); *Patel v. City of Madison*, 959 F.3d 1330, 1340–44 (11th Cir. 2020) (holding that an officer was not entitled to qualified immunity where, after a confused elderly man momentarily adjusted his footing and turned his head during a stop, the officer swept his legs out from under him and threw him head-first to the ground while holding his hands behind his back, because a jury could find the plaintiff was not resisting and that the force used was gratuitous and excessive); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1326–28 (11th Cir. 2017) (holding that an officer was not entitled to qualified immunity where, during a misdemeanor investigation, he unexpectedly shoved a compliant, nonresisting man backward into a car-door jamb, causing severe neck and shoulder injuries, because gratuitous force against a nonthreatening person constituted an obvious Fourth Amendment violation).

These cases, along with the principles recognized in *Edwards v. Grubbs*, 179 F.4th 909 (11th Cir. 2026),[4] show Defendant is not entitled to qualified immunity

---

[4] Although *Edwards* was decided after this incident, it concerned conduct that occurred in 2018. Its qualified immunity analysis therefore determines the law

because it was clearly established by December 2024 that an officer may not use force sufficient to slam a bystander's head into a concrete sidewalk without warning.

### D. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S STATE LAW CLAIMS

The district court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 of Plaintiff's state-law claims solely because it dismissed the claim over which it had original jurisdiction. If this Court reinstates Plaintiff's § 1983 claim, it should also vacate the dismissal of the state-law claims and remand them for further proceedings. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1300–01 (11th Cir. 2007) (vacating dismissal of supplemental state-law claims following reversal of dismissal of a federal claim because the claims should "travel as a group and avoid any piecemeal appellate consideration of them"). The state-law claims arise from the same events as the federal claims and therefore fall within the district court's supplemental jurisdiction under § 1367(a). Because the district court's decision rested exclusively on the dismissal of the federal claim, reinstatement of any federal claim warrants reconsideration of the jurisdictional ruling. *Compare Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1303 (11th Cir. 2007) (holding that because the plaintiff did not raise the issue of the dismissal of

---

as it existed in 2018.

her state law claims in her appeal, the court would not remand for the district court to reconsider the decision to dismiss them in spite of the court's reinstatement some of the plaintiff's federal claims).

## CONCLUSION

The district court erred by finding that Plaintiff was not seized under the Fourth Amendment and dismissing her Fourth Amendment claim. This Court should vacate the dismissal of Plaintiff's case and remand the case to the district court to consider whether the use of force violates the Fourth Amendment in the first instance.

Respectfully submitted, this 4th day of November, 2026.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

/s/Wingo Smith
Wingo Smith
Georgia Bar No. 147896

FILIPOVITS & SMITH, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404-905-2225
jeff@civil-rights.law

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this document complies with the 13,000 word limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3, words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font. The brief was prepared using LibreOffice 26.2.6-1.

This 4th day of November, 2026.

/s/Jeff Filipovits
Jeff Filipovits
Georgia Bar No. 825553

Filipovits & Smith, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, Georgia 30306
404-905-2225
jeff@civil-rights.law